IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA LEGARDA,

    Plaintiff,

vs.                                                                      No. CIV 96-1719 LH/WWD

KENNETH S. APFEL,[1]
Commissioner of Social Security,

    Defendant.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1. This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed December 12, 1997 [9-1]. The Commissioner denied plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 51 at the time of the hearing, alleges a disability which commenced September 6, 1992, due to hip problems and mental impairment. Ms. Legarda has a high school equivalency education, plus additional training, and past work experience as a corrections officer, a ceramics worker, personal attendant, security guard and motel maid.

    2. The Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that plaintiff could perform sedentary and light work. The Appeals Council denied

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J. Callahan, who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Ms. Legarda's request for review, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4.  Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ was incorrect in finding that plaintiff has a high school education; (2) the ALJ's finding that plaintiff's impairments do not singly or in combination meet or equal any listed impairment is not based on substantial evidence and is also incomplete; (3) the ALJ's determination regarding plaintiff's residual functional capacity is not based on all the relevant medical evidence; (4) the ALJ erred in stating that there is no evidence of any severe mental impairment for a continuous period of 12 months or more; (5) the ALJ was in error in finding that Ms. Legarda's testimony of subjective complaints is not supported by the evidence; (6) the ALJ did not take into account side effects from her medications which make her drowsy.

5.  Since her disability onset date, Ms. Legarda unsuccessfully attempted several jobs, including motel maid and security guard, but could not continue working due to pain resulting from standing too long, lifting or reaching.  Tr. at 240-43.  She currently lives with her daughter and helps out with the chores, such as washing dishes, making beds and dusting and sweeping. Tr. at 93.  She washes clothes and is "in and out of the house."  Tr. at 91.  She is able to drive to

her daughter's, and returns home around 5:00 p.m., when she makes dinner. Id.[2]

6. Plaintiff stated at the hearing that she walks each morning for 10 or 15 minutes, Tr. at 245, and spends most of the day watching television and reading a bit. She stated that she needs to take a 1 and ½ to 2 hour nap because the Klonopin, which she takes for her "nerves," makes her drowsy. Id.

7. In 1960, Ms. Legarda was in an accident where she sustained injury to her left hip and thigh, for which she had surgery in which pins were applied. Tr. at 239, 210-11. The pins were removed about nine years later, and plaintiff started experiencing pain in her left hip radiating to her left inguinal area about three years after that. Tr. at 210.[3] She has been diagnosed with degenerative joint disease. Tr. at 154, 239. She currently takes Klonopin, Prozac, penicillin, Advil and Tylenol. Ms. Legarda also alleges a mental impairment of depression and "everyday" anxiety. Tr. at 235. When she was five or six years old, she was sexually abused by her teen-age brother.

**First Alleged Error**

8. Plaintiff contends that the ALJ was incorrect in finding that plaintiff has a high school education, because she was educated formally only through 8th grade and has a GED. Although the regulations do not define "high school graduate," plaintiff's argument has no merit. See 20 C.F.R. Pt.404, Subpt.P, App. 2. A GED, by its very name, *is* the equivalent of a high school

---

[2] Elsewhere in the record, she states that her daughter does the shopping and cooking. Tr. at 128.

[3] Although Ms. Legarda's medical history includes rib fracture and heart problems, the medical evidence as well as her own testimony bears out that the hip pain and mental impairment are alleged as precluding her ability to work.

education, and thus would satisfy its requirement when consulting the medical-vocational guidelines.

**Second Alleged Error**

9.  Plaintiff claims that the ALJ's finding that plaintiff's impairments do not singly or in combination meet or equal any listed impairment is not based on substantial evidence and is also incomplete.  Plaintiff lists a litany of complaints and impairments (angina, myocardial infarction, left rotator cuff tear, e.g., Mem. at 13) which she alleges were not taken into account by the ALJ.

10.  The regulations require that the Commissioner consider all impairments in combination when deciding the severity of claimant's impairments even if those impairments, if considered separately, would not be severe.  20 C.F.R. §§ 404.1523; 416.923.  Medical equivalence to determine whether the combination of impairments is medically equal to any listed impairment, however, must be based on medical findings.  20 C.F.R. §§ 404.1526; 416.926.

11.  The medical evidence in the record does not refute the ALJ's finding.  The medical reports from Dr. DeCoster, an orthopedist, Dr. David Schneider, an internist, and Dr. Carlos Balcazar, a psychiatrist, do not contain objective findings such that the combination of her impairments would be the equivalent of a listed impairment.  For example, the medical reports seem to be in agreement that all view plaintiff's hip problem as her main problem.  Tr. at 153, 212.

12.  Neither does her obesity and arthritis qualify plaintiff for listing 9.09 under "obesity." Plaintiff does not satisfy either part of the listed requirements.  She is about 55 pounds short of the first requirement.  Tr. at 197.  As the ALJ noted, Dr. Schneider felt that her obesity was "not a mechanical problem." Tr. at 15,  Also, none of the medical evidence supports a finding of

arthritis, which is associated with the second part of the listing requirement which plaintiff alleges she meets. See Tr. at 196. In fact, Dr. Coster noted that rheumatological conditions were ruled out. Tr. at 153. Second, none of the factors under the second part of the factors required under the second part exist. Plaintiff has not met her burden at step three.

**Third and Fourth Alleged Errors**

13. Ms. Legarda next alleges that the ALJ's determination regarding plaintiff's residual functional capacity is not based on all the relevant medical evidence. Plaintiff contends the ALJ mistakenly relied on the grids in determining that plaintiff was not disabled. In addition, she alleges that the ALJ erred in stating that there is no evidence of any severe mental impairment for a continuous period of 12 months or more. However, I find that the ALJ's determination was based on substantial evidence from the medical findings and reports of physicians who saw Ms. Legarda.

14. Dr. Schneider saw Ms. Legarda in a consultative exam in December 1992. Although he noted some decreased range of motion, Tr. at 198, he nevertheless opined that on an "overall basis," plaintiff was capable of "performing work-related activities." Tr. at 198.[4] Her obesity was not seen as a mechanical problem. Tr. at 199. Ms. Legarda reported that she could sit for 2 hours and stand or walk for 30 minutes. Tr. at 196. Dr. Schneider acknowledged past episodes of unipolar depression, but noted that there was "no evidence of recurrence" and that plaintiff did not require "further psychiatric examination." Tr. at 197, 199.

---

[4] Doctors can make findings relating to opinions about the amount of hours claimant can work, although they cannot determine whether a disability exists. See Smallwood v. Chater, 65 F.3d 87, 88 (8th Cir. 1995).

15. Dr. Balcazar, a psychiatrist, saw plaintiff in March 1994. Tr. at 210-213. Plaintiff complained of pain in her left hip as well as anxiety and depression. The doctor stated that plaintiff showed some anxiety, Tr. at 212, but that her main handicap is physical, in that her left hip pain causes her some difficulty standing and walking. Tr. at 212. From the psychiatric standpoint, Dr. Balcazar felt that plaintiff could perform simple jobs of a repetitious nature at a competitive rate. He also did not foresee difficulty in her interaction with co-workers and supervisory personnel. Id.

16. Dr. Coster saw Ms. Legarda at various times in 1993. In a letter to plaintiff's counsel dated May 13, 1994, he noted that she had "degenerative change of the pubic symphysis" and "left thigh pain of unknown origin." Tr. at 154, 174. However, he was not able to identify a diagnosis for which plaintiff was unable to "perform any gainful activity."

17. In determining plaintiff's residual functional capacity, the ALJ considered plaintiff's symptoms (such as pain), signs, and laboratory findings together with other evidence obtained. 20 C.F.R. Pt.404,Subpt.P, App.2 §200(c). There is no indication from any of the treatment forms or medical reports that plaintiff's impairments affected her ability to engage in a full range of sedentary or light work. Thus, the ALJ's step five analysis relying on the grids was based on substantial evidence. Tr. at 15; Thompson, 987 F.2d at 1488 (citations omitted) (Commissioner must show claimant can perform substantial majority of jobs in RFC category).

18. Plaintiff's mental impairment does not invalidate the ALJ's use of the grids. Resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments. Thompson, 987 F.2d at 1488. However, in this case, the ALJ conducted legally correct inquiries into plaintiff's nonexertional impairments (see below) and ultimately

6

determined that plaintiff's subjective complaints of pain were noncredible. He also found that her mental impairments did not preclude work.

19. The most serious of Ms. Legarda's symptoms resulting from her mental impairment occurred during the 1980's. During this period, plaintiff was treated in the 1980's with several hospitalizations for her anxiety and depression. At least twice she was taken to the hospital by ambulance following episodes of hallucination and marked agitation, and was diagnosed with possible paranoid schizophrenia. Tr. at 136, 146, 136-37. At one point she was treated with antipsychotic medications as well as antidepressants such as Elavil. Tr. at 139, 141.

20. At various times during this early period, plaintiff stopped taking medications when she was feeling better, as noted by Dr. Balcazar in 1994. Tr. at 212. An outpatient treatment note from UNM's Mental Health Program from October 1991 notes that plaintiff had been depressed for about eight months prior. At the time, her son was sent to prison, she lost her job, and she became separated from her husband. Tr. at 135. Dr. Friar prescribed Elavil for her symptoms.

21. An outpatient note from November 1993 shows a diagnosis of major depression, but stated that she had had success with Xanax, Prozac and Valium. At the time of the report, however, she had been on Buspar for about 30 days, with no effect. Plaintiff was restarted on Prozac at that time. Tr. at 170. Treatment notes from April and May 1994 show that plaintiff obtained considerable relief from Xanax. Tr. at 152, 155 (plaintiff "found . . . Xanax quite helpful in past for anxiety"). An impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability. Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991); Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985); see also Dixon v. Heckler, 811 F.2d 506,

508 (10th Cir. 1987).

22.   Although records from the 1980's demonstrate that plaintiff experienced symptoms flowing from her mental impairment that were serious enough for hospitalization, the ALJ was correct that the record does not contain any evidence of severe mental impairments for a continuous period of twelve months or more.  The reports of both Dr. Schneider and Dr. Balcazar are among the medical evidence that supports this finding.  Thus, the ALJ was not in error in determining plaintiff's residual functional capacity by relying on the grids.

**Fifth Alleged Error**

23.   Plaintiff next claims that the ALJ was in error in finding that Ms. Legarda's testimony of subjective complaints is not supported by the evidence.  Following a legally correct and appropriate credibility inquiry, the ALJ found that a symptom producing impairment did exist, but that plaintiff's complaints of pain were not supported by the evidence.  Tr. at 15.[5]

24.   The ALJ felt that plaintiff was exaggerating the degree of pain which she claimed was disabling and preventing her from working.  Tr. at 15.  In fact, as far back as November 1981 (which is outside the relevant period here, but nevertheless is consistent with the ALJ's findings), a clinical psychologist who administered an MMPI to Ms. Legarda opined that plaintiff "may be overeacting. . ." and was "extremely interested in the results of the test," which was considered unusual by the tester.  Tr. at 150.

25.   The Court ordinarily defers to the ALJ as trier of fact on credibility.  Thompson, 987

---

[5] An analysis of pain requires a three-part determination: 1) whether claimant has established, by objective medical evidence, a pain- producing impairment;  2)  if so, whether there is a "loose nexus" between that impairment and claimant's subjective complaints of pain;  and 3) if so, whether, considering all of the evidence, claimant's pain is disabling.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir.1994) (citing Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir.1987)).

F.2d at 1489 (citations omitted).  This deference also is accorded to the ALJ on matters where a plaintiff is observed to exaggerate symptoms.  See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

26.  Plaintiff, for example, testified that she needs to nap every day for almost 2 hours.  However, there is no corroboration from treatment notes or physician reports which indicate a medical need for these naps.  See Smallwood v. Chater, 65 F.3d 87, 88 (8th Cir. 1995); Hanna v. Chater, 930 F.Supp. 378, 389 (N.D.Iowa 1996).  Moreover, she testified that she required the naps due to side effects of her medications, which make her drowsy.  Tr. at 245.  Yet, a UNM outpatient treatment note from May 1994 reveals that she reported "no side effects of meds."  Tr. at 155.

27.  In his decision, the ALJ took into account not only plaintiff's testimony, but statements of reports from her doctors, prescribed treatment, daily activities, and any other evidence showing how her impairments and related symptoms affect the ability to work.  20 C.F.R. §§ 404.1529, 416.929.  Here, the ALJ did not err in finding that the medical records were not consistent with the nonmedical testimony as to the severity of the pain.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990) ("to establish disabling pain without the explicit confirmation of treating physicians may be difficult.  Nonetheless, the claimant is entitled to have. . . nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence").

**Sixth Alleged Error**

28.  Last, plaintiff argues that the ALJ did not take into account side effects from her medications which make her drowsy.  This complaint is not borne out by the evidence.  See ¶ 26,

9

above.  Further, the ALJ's credibility determination was in general based on substantial evidence.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [9-1] be denied and this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE